Lindell Adcock v. H and L Builders We have Penny Livingston for the appellant And we have Mr. John Schauberg for the appellee You may proceed when you're prepared to May I please support? We know that according to the Coomer case that you have no need to prove an adverse impact for interference with natural drainage or any change in the flow of natural drainage But we also know from the evidence in this case that the Adcocks and their neighbors have been adversely impacted from flooding through the testimony, through the photographs through the engineering How did you arrange to get these cases back and back? It wasn't on purpose Although this works because Mr. Nedemeyer is in both cases And what you can see is that the testimony was such that this stormwater management system on 3rd Street and Oak Allen Cambridge Condominiums The backyard of these people that live in the condos is the stormwater management system I'm sure they don't realize that And the testimony of the city's own hired expert Bolsher Engineering, that would be who to hire His testimony was Not only will this not handle a 100-year event which is required by Oak Allen ordinances which is an ordinance we are enforcing in this case But it doesn't even handle a 2-year event In fact, his testimony was that through his engineering study what he was able to discover is Not only does the Cambridge Condominiums stormwater management system not handle the water of the Cambridge Condominiums system behind a 2-year event without overtopping the berm and putting it on the entire neighborhood next door But the Cambridge Boulevard which is also called 3rd Street that the city took ownership of the water from that street is actually backing into the detention basin because of the thickness of the pipe and because the water has nowhere else to go It should be going across Route 50 instead of backing into the stormwater system He also testified that the stormwater system has this juncture box that is supposed to allow water to flow in that would then go through and go out and the juncture box's elevation is so high that the water can't get to it before it overtops the berm and that would be true even if you didn't have all the low spots on the berm So what this case is about is enforcing an ordinance The city doesn't seem to want to enforce their own ordinance and their ordinance says in it that all of the sheets that are included in the plans the condominium complex has approved by the City of Booth Valley which are to be considered ordinance requirements So all the improvement plans are ordinance requirements Sheet 70 shows that the fence is supposed to be behind the berm The fence is on the berm It also shows that the berm is supposed to be at an elevation of 551 uniformly for the entire 1,000 feet and the only person who shot survey on this was Gary Holscher and Holscher shows that at several points it is as far below as 2 feet We have videotape of the water coming over the berm We have photograph after photograph after photograph year after year after year of the water going on to the Agcox property and their neighbor's property And what we also have clearly from Holscher's testimony from Mike Garland's testimony and from the circumstances of the case and from Mr. Sullivan the city's regular engineer that's on staff All three of these engineers agree the post-development runoff exceeds the pre-development runoff which according to this court's bottle-leg case is not allowed and if you have pre-development runoff that is higher than post-development runoff that is an adverse impact so you also don't have to prove an adverse impact It is per se nuisance So the plaintiff proved by a pre-commencement evidence that this flooding is a per se nuisance but we also proved that the ordinance was violated and the court I'm not sure if it was the passage of time or what but the court seemed to interpret that First, he seemed to interpret that at one point he says there's no proof that the raising of the land caused flooding Well, the raising of the land and there's photographs on that was what the first lawsuit was about They came in, they brought in dirt after dirt you know, truckload after truckload all these trucks full of dirt and they raised the land and that caused flooding but also there was another subdivision the Hubbard subdivision that was putting water through Elm Street and coming right down to the Adcocks and their neighbor's property and that pipe was closed off and that water was to be taken by the Cambridge Condominium Development Stormwater Management and Mr. Neddemeyer also says that that's what it was In fact, in Neddemeyer's letter that he writes to the plaintiff to get them to dismiss the first lawsuit he says in the developed condition nearly the entire condominium site drains towards the existing detention pond not towards Cambridge Boulevard the existing detention pond was deepened and increased in size to handle the 100-year design storm without overtopping and flooding the existing residential area In fact, he testifies that it was his belief that the Adcocks would receive 60% less water after the building of the condominiums and the condominiums stormwater management system and you can see from the photographs and from the videotape they're receiving as much water they're really receiving more water than they've ever received the city wants to make the point that because the Adcocks are in the lowest spot in the whole area they've always received flooding well, being in the lowest spot is undeniable just because you're in the lowest spot doesn't mean that every time a new development comes in all that water should be coming your way the law says you're supposed to contain your water on your own land all of the testimonies show that that is not what's happening to prove a violation of the ordinance if we show the elevations not uniformly at 551 we've got a violation well, that's the only testimony there was and even Neddemeyer testified that if the berm was overflowing it was because the elevation was not at its height now, he admitted that that's what he said in his deposition although at trial he had a new theory and at trial his new theory for all of the flooding this neighborhood is experiencing from this thousand foot long berm was a basketball found its way into the hole of the juncture box well, in a tongue-in-cheek moment Mr. Holscher said that would actually help but he also said you can't even get the water to the juncture box because of the elevation and you can see in some of the photographs that you've got grass that you can still see over the water in the detention basin and that's because it is silted in so you are seeing an increase in the elevation there as well you also have a pipe that's coming through the berm and Mr. Sullivan said oh my gosh, that's not allowed and he would never allow it there's the photograph and it's there and Mr. Holland admits it's there you have Mr. Arnold saying it shouldn't be there as well and then you also have I mean the biggest issue here is everyone is supposed to handle a hundred year storm event that's the standard that's the ordinance in O'Bannon and we are enforcing that ordinance and it's not handling a hundred year event we haven't even had a hundred year event and yet we're getting flooding every time it rains and when you look at what Mr. Holscher has to say on that point Mr. Holscher in his report says for existing conditions the evacuation indicated the evaluation indicated that the overflow capacity of the primary control structure was adversely influenced by the back water induced impact from the existing 30 inch diameter storm water pipe to which the outlet conduit is connected here's what happened they put this flat 24 inch pipe in to outlet all of this thousand feet of berm of controlled water out to Cambridge Boulevard but in the original design in the ordinance there was supposed to be a weir structure to the north of this berm and the city was going to pipe it across 50 that way well they didn't do that so they now are allowing them to put this pipe in to put the water into their 30 inch pipe that goes across to 50 except for one thing all of their water goes into that 30 inch pipe so it can't take this water so it not only stops the flow of the water from the detention basin it backs up the flow from the roadway water into the detention basin and stops any of the water from coming out what is the result? it overflows he goes on to say in fact a storm CAD model for the existing conditions indicates that the hydraulic grade line for the two year storm at the junction of the 24 inch outflow conduit and the 30 inch diameter storm water pipe was high enough elevation at 553.75 to cause flow into the detention area stage elevation 549.70 so there's like three feet difference there and he says not out of the area as the detention and outflow structure design intended therefore the stage in the pond is controlled by any low point in the containing embankment in other words it's going to over flow the berm this result verifies the claims by homeowners downstream of the detention basin that the existing configuration of the detention pond and outlet structure is causing flooding in their area even during frequent events so it's not handling a hundred year storm event you have some dramatic photos showing the flooding I assume that's after you claim this all curve by the city right do you have photos showing the same property prior because the city's claiming that it's no greater than it was before well it's different water when they first raised the ground well what's different water is that okay well first it's different water when they first raised the ground in 1999 to 2001 they brought in thousands of truckloads of dirt in this six acre lot that raising of the ground well do you have photographs showing what it was before the development as opposed to these that are after the development well we have photos from the first losses but that was also after issues were occurring I don't remember if there were any photographs but before I don't think there were there was certainly testimony that when Mr. Adcock first moved in he had some drainage problems he put a pipe in for ten years that pipe worked then you had the and as part of the first losses they were supposed to solve the water as well as the water from the new development but that's not what's happening here there's still flooding so there was a little bit of confusion in the court order about the raised ground because that's what the whole if you go look at the plea for the first complaint it says you backed sewage into our house and you have raised the ground that was the city backed the sewage you have raised the ground which has caused us a problem and oh by the way you didn't make these people handle their storm water and we're getting it when you get to the second losses what you have is we could have never known that the storm water system would be incompetently implemented we could not have known that they didn't put the berm up to 551 we couldn't have known that they would put a pipe in there we couldn't have known that they wouldn't handle a 100 year event because that was the representation made that this storm water system would hold all water for a 100 year event and not flood the neighborhood well it floods the neighborhood even from minor events and that's all the testimony and Mr. Sullivan who's the city's normal engineer he says that in an email that he sends he says well kosher's determined that there is flooding here and we are contributing to that flooding from this background there was flooding on the property prior to the development is that correct just not to the extent there was flooding on the property however once they put in the detention bases before they built the condos there was no flood until all the condos were finished and in fact kosher has some statements that verify that fact where he says that you would not have expected the neighborhood to get any water from the placing in of that detention basin before the condos were built and then the issue becomes well the impervious surfaces from the condos what are they contributing to it although he also does say that if you put the elevation I think he says that 550.56 551 is what's required that he thought it would contain the water from the condo development now he prefers to have two feet of free board so I'm sure he would like it to be higher than the ordinance requires but at a minimum if you at least put it up to what the ordinance requires we should have less flooding in the neighborhood there's also some controversy I guess about the levels of proof well you've got four really five engineers who testified Pat Judge noticed that the water level  too high and he recommended that they get easements and that they hire Holsher then you have Holsher run a study and his study shows that it's going to over flood in fact he says there's no effective storage in this city that he has not studied whether they are getting more water as a result of the condominium development he did not do an engineering study what he did was he recognized that the fence line was undulating which meant that it couldn't have been an even elevation so that couldn't be right according to the ordinance and it also couldn't be right because the ordinance has these little boxes that show where the fence is supposed to be which is behind the berm and it couldn't have been that way and then he from his engineering experience believed that the fence was undulating and Mr. Sullivan also agreed with that and he's the city's engineer as well. I mean what this case is really about is it's about Winston's Wedding and it's been going on a long time and the Adcocks are the lowest spot and the city says yeah but that detention basin was supposed to handle that water and it does not and the photographs are a little more than anecdotal evidence. This is really what's happening in this neighborhood. You now have 84 condos that are putting their water on five property buildings in that area and they're absorbing all the water and the city's pipe is backing up into it and when you look at the municipal code it says that in any case where there's a structure or land that's being used in violation of an ordinance that if a person is substantially affected by that violation they may have to obey those violations without showing conditional elements of injunctive relief. I'm pretty sure we showed that too. It's irreparable harm to be flooded out every time it rains and also in the statute it says that the owner need not prove special or unique damages from the violation of the ordinance. The biggest deal really is it doesn't handle a 100 year event. It doesn't handle a two year event. It needs repair. And Mr. Holsher came up with a solution for the city to repair this and we just wanted him to implement that solution but we never did get any cooperation from anyone at any point in time. So we feel very strongly that we've shown that this is new and different water because the water from the first lawsuit was handled and the storm water management system was supposed to handle the water and it doesn't even handle the water at all. And then of course the judge said that there was insufficient evidence of a 100 year event. And then with respect to handling a 100 year event, all of the testimony is pretty much when it rains they get the water. So it's not handling a 100 year event. It's got a pipe in the berm, the structure, the juncture box can't take the water it's supposed to take. And then the weir to the north was not built until after the lawsuit. The city tries to make it seem like the ad cops agreed to this weir and knew it would impose on their neighbors and it really seemed like a nasty way to say that. They knew that the weir was supposed to be built and they   were going to have to pay for it. And that's why they didn't build the weir.  that's why they didn't build the weir. And that's why they didn't build the weir. And that's why they didn't build the weir. that's why they didn't build the weir. What Cleaners Council seems to disregard is that this isn't really a surface water case as it stands here today. This is a standard of review case. The judge already heard six days of evidence, 1,200 pages of testimony, 94 minutes, videotapes, groups of groups of photographs, and he took a walk around the site of alleged flooding about a month before the trial. The standard of review is unless it's against the manifest way of the evidence, the court should affirm the burden of the judgment. The manifest way of the evidence means an opposite conclusion has to be obvious. The manifest is obvious. It has to be apparent. This court is not supposed to be doing this. The court has not been finished. He did report that Gary Holsher determined the runoff would exceed. However, at trial Gary Holsher said he could not testify that there was a violation of Ordinance 3054. He said level 551 is based on a different data, which is basically a different benchmark than Pat Hedemeyer used when he was doing his design drawings. And he couldn't say that what he found on the survey was a violation of the Ordinance. So what the court should do at this point is accept the balance that the trial judge determined that there was a violation of     the court should accept the balance that the trial judge determined that there was a violation of the Ordinance and that the court should accept the balance that the court determined that there was a violation of the court judgment of the court judgment that there was a violation of the court judgment that the court determined of the court         curt judgment of the trial court judgment in this case but not in that case in this case  not in  case in this case   middle swank order Court sentence . Or this judge court had make removed his decision . I read much of this trial and reached an appropriate result. It's supported by the evidence. Can argument be made for a contrary result? It's not obvious. It's not apparent. Judge weighed the evidence. That's not what this court did.            Judge weighed the evidence. That's not what this court did. I read much of this trial. It's not obvious. It's not apparent. Judge weighed  evidence.     read much of this court defense case. It's not apparent. Judge weighed the evidence. That's not apparent. Judge weighed          Judge weighed the evidence. Judge weighed the evidence. He weighed the evidence. Now the city would do whatever the flood was, he would do whatever the floods were, and therefore the city would do whatever the floods were, and therefore the city would do whatever the        do whatever the floods were, and therefore the city would do whatever it ought to do          to do and therefore the city would do whatever it ought to do and therefore do  therefore the city would